**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

ZHAOZHEN CAO,

Petitioner,

v.

WARDEN OF ADELANTO ICE PROCESSING CENTER et al.,

Respondents.

Case No. 5:26-cv-04740-DFM

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

## I. INTRODUCTION

Petitioner Zhaozhen Cao filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging her immigration detention and primarily seeking release from custody. See Dkt. 1 ("Petition"). Respondents filed an Answer in which they do not contest the Petition's factual allegations, concede that Petitioner appears to be entitled to a bond hearing, and argue that to the extent Petitioner would be entitled to any remedy, it would be, at most, for the Court to order a bond hearing. See Dkt. 8 ("Answer"). Petitioner filed a Reply. See Dkt. 9 ("Reply").

For the reasons set forth below, the Petition is **GRANTED IN PART**. Petitioner is entitled to a bond hearing before an Immigration Judge ("IJ") under 8 U.S.C. § 1226(a). Petitioner is not entitled to immediate release.

## II. BACKGROUND

Petitioner is a native and citizen of the People's Republic of China. See Petition ¶ 1. Petitioner was admitted into the United States on a valid B-2 nonimmigrant visa on or about January 31, 2026. See id. ¶¶ 7, 13. Respondents allege, and Petitioner does not contest, that Petitioner overstayed her visa. See Answer at 2. Petitioner alleges, and Respondents do not contest, that she has lived openly since her admission, established community ties, and maintained a clear record with no criminal history. See Petition ¶¶ 14, 30, 44.

At some point, Petitioner applied for asylum with United States Citizenship and Immigration Services ("USCIS"). See id. ¶ 13. On or about August 14, 2026, Petitioner appeared, as instructed, at a USCIS Application Support Center for biometrics collection. See id. ¶ 15. While inside the USCIS office, U.S. Immigration and Customs Enforcement ("ICE") took Petitioner into custody without advance notice, a warrant, or a hearing. See id. ¶¶ 16, 19. The Department of Homeland Security placed Petitioner in removal proceedings, which remain pending. See id. ¶ 17. When Petitioner was taken into custody, ICE took her personal belongings, including her passport and Chinese national identification card. See id. ¶ 20.

Petitioner remains detained at the Adelanto ICE Processing Center. See id. ¶ 18. Petitioner brings claims for violations of procedural and substantive due process, challenging her detention without pre-deprivation notice or a hearing. See id. ¶¶ 26-46. Petitioner seeks her immediate release or, alternatively and only if the Court concludes that she is not legally entitled to immediate release, that the Court order Respondents to provide her with a bond hearing before an IJ per 8 U.S.C. § 1226(a) at which the Government bears the burden of establishing by clear and convincing evidence that continued detention is appropriate to prevent her flight or to protect the public. See id. at 10-11.

Respondents contend that Petitioner is properly detained pending a potential § 1226(a) bond hearing because this is her first detention based upon a visa overstay. See Answer at 2. Respondents contend that to the extent Petitioner has not yet requested such a bond hearing, the Petition is defective on the basis that Petitioner has not exhausted her available administrative remedies. See id. Respondents contend that to the extent Petitioner is entitled to any remedy, it is a bond hearing rather than release. See id. at 2-3.

## III. DISCUSSION

A federal court may grant a writ of habeas corpus to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas jurisdiction extends to noncitizens challenging the lawfulness of their immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001)

### A. Exhaustion Does Not Bar the Claims Presented

Respondents argue that "to the extent the instant Petitioner has not yet requested such a bond hearing from the Immigration Court, the Petitioner has not yet properly exhausted their available administrative remedies, and their Petition is defective on that basis." Answer at 2.

A noncitizen must ordinarily exhaust available administrative remedies before challenging immigration detention under § 2241. "Once an alien has received a . . . bond hearing before an [IJ], [s/]he may appeal the IJ's decision to the Board of Immigration Appeals (BIA). If the alien is dissatisfied with the BIA's decision, [s/]he may then file a habeas petition in the district court." Leonardo v. Crawford, 646 F.3d 1157, 1159 (9th Cir. 2011). When a petitioner does not exhaust this prudential remedy, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." Id. at 1160.

A petitioner "must exhaust administrative remedies before raising . . . constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal." Id. (quoting Rojas-Garcia v. Ashcroft, 339 F.3d 814, 819 (9th Cir. 2003)). "The key is to distinguish the procedural errors, constitutional or otherwise, that are correctable by the administrative tribunal from those that lie outside the BIA's ken." Liu v. Waters, 55 F.3d 421, 426 (9th Cir. 1995).

Here, the record indicates that Petitioner has not yet received a bond hearing. Accordingly, Petitioner does not contend, for example, that the IJ misapplied the bond factors or misweighed the evidence; such a claim would be correctable on appeal. Rather, Petitioner contends that the Government violated the Fifth Amendment by taking her into custody without pre-deprivation process. The BIA's authority in a custody appeal extends to redetermination of custody, not to the constitutionality of the arrest that preceded it. Requiring exhaustion of a remedy that could not redress the claim would serve none of the doctrine's purposes. See Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017). Accordingly, exhaustion does not bar consideration of the Petition and its claims.

**B. Petitioner's Detention Is Governed by 8 U.S.C. §1226(a)**

Section 1226(a) is the general provision governing the detention of a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1226(a) governs here, and the parties do not contend otherwise. See Answer at 2 (citing Rodriguez Vazquez v. Bostock, No. 25-6842, --- F. 4th. ---, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026)). Unlike the mandatory-detention provisions, section 1226(a) permits the Attorney General to "release the alien on . . . bond" or "conditional parole," 8 U.S.C. § 1226(a)(2); and its implementing regulation entitles a person so detained to a bond hearing before an IJ at the outset of detention, see 8 C.F.R. § 1236.1(d)(1).

Petitioner was admitted to the United States on a non-immigrant B-2 visa. See Petition ¶ 13. A noncitizen who enters "after inspection and authorization by an immigration officer" has been "admitted." 8 U.S.C. § 1101(a)(13)(A). Petitioner has no criminal conviction that would trigger mandatory detention under § 1226(c). See Petition ¶ 14. Her detention is therefore governed by § 1226(a) and she is entitled to a bond hearing she has not received.

**C. Under These Circumstances, Petitioner Is Not Entitled to Immediate Release**

Petitioner challenges her detention under the Fifth Amendment Due Process Clause. The Fifth Amendment protects "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" the Due Process Clause protects. Zadvydas, 533 U.S. at 690, 693.

**1. Substantive Due Process**

Petitioner raises a substantive due process claim, challenging her detention in the absence of circumstances demonstrating that such confinement is necessary to serve a legitimate governmental purpose. See Petition ¶¶ 41-46.

The Supreme Court has held that detention pending removal proceedings serves the recognized regulatory purposes of ensuring appearance and protecting the community, and that detention during removal proceedings is a constitutionally permissible part of that process. See Zadvydas, 533 U.S. at 690-91; Demore v. Kim, 538 U.S. 510, 528, 531 (2003). The Ninth Circuit has held that detention under § 1226(a) pending a decision on removal is rationally related to the government's interests in ensuring appearance and protecting the

community, and those interests do not diminish while removal proceedings remain pending. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). The Ninth Circuit has not foreclosed as-applied challenges to truly prolonged detention under § 1226(a), see id. at 1213-14, but this does not appear to be such a case, especially where further process remains available to Petitioner. Whether Petitioner's detention is necessary in consideration of the potential danger to the community and/or risk of flight is for the immigration court to determine in the first instance.

### 2. Procedural Due Process

Petitioner raises a procedural due process claim, challenging her detention without prior notice or a pre-deprivation hearing. See Petition ¶¶ 26-45.

In the context of detention under § 1226, this Court has regularly applied the factors set forth in Mathews v. Eldridge, 424 U.S. 319, 335 (1976), and granted—or, in non-consent cases, recommended that the District Judge grant—a habeas petition and ordered the petitioner released where the petitioner was previously apprehended by immigration authorities, released on an order of release on recognizance, and re-detained without adequate process. See, e.g., Chiquito Subero v. Johnson, No. 26-2163, 2026 WL 1288645 (C.D. Cal. May 7, 2026). In this case, the record before the Court does not indicate that Petitioner was in such a situation when she was detained. For a first-time § 1226(a) detainee like Petitioner, the bond hearing at the outset of detention is the process the statute affords.

The Ninth Circuit has held that "§ 1226(a)'s procedures satisfy due process, both facially and as applied" where the noncitizen received "an initial bond hearing before a neutral decisionmaker," with rights of appeal and redetermination. See Rodriguez Diaz, 53 F.4th at 1211. In Rodriguez Diaz, the petitioner was detained under § 1226(a), received a bond hearing

approximately two months into his detention, was denied bond, and remained detained for fourteen additional months. See id. at 1194-95. Applying Mathews, the Ninth Circuit cautioned that it is "important not to overstate the strength of [Petitioner's] showing under the first Mathews factor," because the analysis must "consider the process he received" and "the further process that was available to him." Id. at 1207-08. After examining the existing § 1226(a) procedures, the court held that those procedures "ensured that the risk of erroneous deprivation would be relatively small" and adequately balanced the petitioner's liberty interest against the Government's significant countervailing interest in enforcing the immigration laws. See id. at 1209-10, 1212-13 (internal quotation marks omitted).

Where this Court has previously ordered a noncitizen released on procedural due process grounds, the circumstances involved the liberty interest recognized in Morrissey v. Brewer, 408 U.S. 471 (1972), which arises when the Government has previously released a person from custody and then revokes that release by re-detaining them without notice and an opportunity to be heard. On this record, Petitioner, however, was never previously detained by ICE and released. Rather, she was admitted to the United States on a non-immigrant visa for a limited period of time, overstayed the authorized visa period, and was taken into immigration custody for the first time at the USCIS office in August 2026 after she applied for asylum. See Petition ¶¶ 13-15; Answer at 2. Accordingly, there is no prior custodial release to revoke.

Petitioner cites a series of decisions in which district courts have ordered a first-time detainee and asylum applicant like Petitioner released on procedural due process grounds. See Petition ¶ 29 (collecting cases). But many of those cases involve noncitizens with many years of residence in the United States, often with an affirmative grant of employment authorization. See, e.g., Kharitonova v. Albarran, No. 26-1362, 2026 WL 531441 (N.D. Cal. Feb. 25,

2026) (entering a preliminary injunction where a noncitizen asylum applicant lived in the United States for over ten years), appeal filed, No. 26-2554, (9th Cir. Apr. 24, 2026). Petitioner cannot demonstrate any such multi-year residence or "the Government's affirmative decision not to detain [Petitioner]" underlying the liberty interests identified in these cases. See Gagik T. v. Chestnut, No. 26-4337, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026) ("[T]he Government's course of conduct over six years, taken as a whole, reflected a sustained decision to permit Petitioner's liberty, and it is that decision that gives rise to the interest the Due Process Clause protects."). To the contrary, the record here shows that the Government acted to take Petitioner into custody soon after she applied for asylum. On this record, the appropriate remedy for any failure to provide Petitioner with the bond hearing to which she is entitled is to order the hearing, not to order release.

Petitioner asserts that a post-detention bond hearing cannot remedy the due process violation that she alleges has occurred. See Reply at 3. Again, however, the authority to which Petitioner directs the Court involve circumstances where a noncitizen was re-detained following a prior conditional release. Petitioner's argument may have traction when there is a release-based liberty interest that the Government extinguished without process. But, based on the record before the Court, Petitioner had no such liberty interest.

Consistent with the practice in this District, the Court will order that a bond hearing be held within seven (7) days and that Petitioner be released if the hearing is not timely provided. Petitioner requests a bond hearing at which the Government would bear the burden of proving by clear and convincing evidence that continued detention is appropriate to prevent flight or protect the public. See Petition at 11. Under § 1226(a) and its implementing regulations, the noncitizen bears the burden at a bond hearing of demonstrating that they

are neither a danger to the community nor a flight risk. See 8 C.F.R. §§ 1003.19, 1236.1(c)(8); see also Rodriguez Diaz, 53 F.4th at 1210-12 (describing the § 1226(a) proceeding at which the detainee bore the burden of proving that he was not a flight risk or a danger to the community). Ultimately, the allocation of the burden and the standard of proof at the § 1226(a) hearing are, in the first instance, matters for the immigration court under the laws and procedures ordinarily governing such matters.

### D. Attorney's Fees

Petitioner has requested costs and attorney's fees in this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. See Petition at 11. The EAJA provides in part:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney . . . representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record . . . which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B).

To the extent Petitioner desires to pursue this request, Petitioner should file an application requesting reasonable fees and costs under the EAJA within thirty (30) days.

## IV. ORDER

IT IS THEREFORE ORDERED that:

1. The Petition for Writ of Habeas Corpus is **GRANTED IN PART**.

2. Within seven (7) days of the date of this Order, Respondents shall provide Petitioner (A# 236-951-077) an individualized bond hearing before an immigration judge under 8 U.S.C. § 1226(a). Before any such hearing, Respondents shall provide Petitioner and her counsel, if any, at least two (2) business days' notice of the time and place of the hearing. If Petitioner is granted release on bond, Respondents shall return all of Petitioner's belongings to her upon release, including her passport and Chinese national identity card.

3. If Petitioner is not provided a hearing within seven (7) days, Respondents shall release Petitioner from custody under appropriate conditions of supervision. If Petitioner is released, Respondents shall return all of Petitioner's belongings to her upon release, including her passport and Chinese national identity card.

4. Petitioner's request for immediate release and her request for permanent injunctive relief are **DENIED**.

5. The parties shall file a joint status report within ten (10) days of the date of this Order stating whether and when the bond hearing occurred and, if bond was denied, the stated basis for the denial.

Date: August 31, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge